# IN THE COURT OF APPEALS OF IOWA

————————————

No. 26-0513
Filed July 22, 2026

————————————

**In the Interest of F.M., Minor Child,**

**T.M., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Union County,
The Honorable Andrew Zimmerman, Judge.

————————————

**AFFIRMED**

————————————

Amanda Demichelis of Demichelis Law Firm, P.C., Chariton,
attorney for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney
General, attorneys for appellee State.

Chira Corwin of Corwin Law Firm, Des Moines, attorney and guardian ad
litem for minor child.

————————————

Considered without oral argument
by Greer, P.J., Badding, J., and Mullins, S.J.
Opinion by Badding, J.

1

**BADDING, Judge.**

A mother appeals the termination of her parental rights to her six-year-old son.[1] The child was removed from the mother's custody in December 2024 after she was arrested for possession of methamphetamine. She and the child later tested positive for that drug. Thirteen months later, the mother was still using methamphetamine.

After a termination hearing in January 2026, the juvenile court found that the mother's substance use was unresolved, as were concerns about her mental health, housing, employment, and overall stability. The court terminated her parental rights under Iowa Code section 232.116(1)(d), (f), and (*l*) (2025). We review that ruling de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

The mother first claims that the juvenile court erred in terminating her parental rights under paragraphs (e) and (*l*) of Iowa Code section 232.116(1). Trouble is, the court did not terminate her parental rights under paragraph (e). And although her rights were terminated under paragraph (*l*), she has not challenged the other two grounds relied upon by the court—paragraphs (d) and (f)—or mentioned any of their elements in her argument. The mother accordingly waived any claim of error under those paragraphs. *See In re W.R.*, No. 03-0789, 2003 WL 21362658, at *2 (Iowa Ct. App. June 13, 2003) (finding a father's failure to contest a ground for termination "waive[d] any right to appeal that issue"). We affirm on the unchallenged grounds. *See In re A.S.*, No. 23-1625, 2023 WL 8449568, at *1 (Iowa Ct. App.

---

[1] The father consented to the termination of his parental rights and does not appeal.

Dec. 6, 2023) (collecting cases stating that we may affirm on unchallenged grounds for termination).

Under the same issue heading challenging the statutory grounds for termination, the mother makes a passing claim that termination is not in the best interests of the child "[d]ue to the mother/son bond."[2] She does not, however, mention any of the factors that we consider in our best-interest analysis or provide us with a meaningful argument under this step of our termination framework. While we could find that she waived this claim, *see In re E.H.*, No. 23-1320, 2023 WL 8452201, at *3 (Iowa Ct. App. Dec. 6, 2023), we choose to address it on the merits—which we find lacking.

In reviewing the best-interest step, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *see also In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). Because a "child's mental and emotional condition and needs is inherently impacted by the child's bond with a parent," that bond "is a relevant consideration in the best-interests analysis." *In re L.A.*, 20 N.W.3d 529, 535 (Iowa Ct. App. 2025) (en banc). But it is not the only consideration. Instead, a child's safety and need for a permanent home are the defining elements in a child's best interests. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011). The mother could provide neither for her son.

---

[2] The mother also asserts that "[a] guardianship would be in the child's best interests if the Court determined the child could not return home." Although the mother advocated for a guardianship at the termination hearing, the juvenile court did not rule on that issue. We accordingly find error was not preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised *and decided* by the district court before we will decide them on appeal." (emphasis added)).

The case manager for the Iowa Department of Health and Human Services testified that the mother only had one negative drug test during the underlying child-in-need-of-assistance proceedings. And that test was tampered with. The rest of the mother's tests were "positive and no shows." Her most recent drug test—on January 12, 2026—was also tampered with but still positive for methamphetamine. The mother tried and failed at inpatient treatment three times after her son was removed from her custody. Her longest stay in a residential facility was around one week. This evidence of the mother's unresolved substance use shows that she "presents a clear danger" to the child. *In re T.K.*, No. 08-0984, 2008 WL 3917482, at *2 (Iowa Ct. App. Aug. 27, 2008); *see also In re B.K.*, No. 25-1767, 2026 WL 380831, at *2 (Iowa Ct. App. Feb. 11, 2026) ("[A] parent's methamphetamine use, in itself, creates a dangerous environment for children." (citation omitted)). That danger is compounded by her lack of accountability. *See In re A.B.*, 815 N.W.2d 764, 776–77 (Iowa 2012) (affirming termination where, contrary to the evidence, a father "refused to acknowledge" his unresolved, chronic drug addiction).

On top of the mother's drug use, she did not have stable employment or housing. At the termination hearing, she was living with her boyfriend and working for him. But the case manager testified that the mother continually moved from house to house during the proceedings and was mostly unemployed. At one point, she moved three times in one month. She was also on probation for several criminal charges, including possession of a controlled substance and conspiracy to commit a non-forcible felony. This unstable environment is not the best placement for furthering the child's long-term nurturing and growth or providing for his physical, mental, and emotional needs. *See* Iowa Code § 232.116(2).

4

As for the mother's bond with her son, she was inconsistent with her visitation, often canceling or showing up late. While the visits went well when they took place, the child was disappointed when they did not occur. The juvenile court described one heartbreaking example of a missed visit that highlighted the mother's "difficulty in putting [the child's] needs above her addiction":

> Testimony at the permanency hearing had revealed that [the mother] had promised [the child] that she would take [him] out for trick-or-treat on Halloween and get him a costume. But much to the likely devastation of [the child], [the mother] did not show. Testimony indicated she didn't bother to tell [the child] in advance either (a continuation of prior behavior). The truth . . . [the mother] was using methamphetamine instead, having admitted usage on either October 30 or 31.

(Internal footnotes omitted.) Although we do not doubt the mother's love for her son, we conclude that termination of her parental rights is in his best interest.

The mother's final claim fares no better than her first two. She contends that the juvenile court should have applied the permissive exceptions to termination in Iowa Code section 232.116(3)(a) and (c). These exceptions, if they apply, "are permissive, not mandatory." *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). We agree with the juvenile court that the mother did not meet her burden to establish an exception. *See id.* (stating it is the parent's burden to prove an exception to termination).

First, section 232.116(3)(a) only applies when a relative has "legal custody" of the child. *See In re A.B.*, 956 N.W.2d 162, 170 (Iowa 2021). While the child was placed with his paternal grandmother, the department had legal custody. Second, for section 232.116(3)(c) to apply, the mother was required to prove by "clear and convincing evidence that the termination would be

detrimental to the child at the time due to the closeness of the parent-child relationship." For the same reasons discussed above, she failed to do so.

**AFFIRMED.**